UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| MATTHEW JOHNSON, AS GUARDIAN AD LITEM FOR V.J., MINOR,<br><br>Plaintiff,<br><br>vs.<br><br>DWIGHT JOHNSON, and CAREY JOHNSON,<br><br>Defendants. | 3:17-CV-03001-RAL<br><br>OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Matthew Johnson, as Guardian Ad Litem for V.J., a minor ("Plaintiff"), brought this diversity action against Dwight and Carey Johnson ("Defendants") alleging negligent supervision of V.J. allegedly causing V.J. to sustain injuries in an all-terrain vehicle ("ATV") accident on Defendants' property. Doc. 1. With discovery substantially completed, Defendants moved for summary judgment. Doc. 11. Plaintiff opposed that motion. Doc. 17. For the reasons stated below, this Court denies Defendants' motion for summary judgment.

I.   **Facts**

V.J. was born in April of 2002 and is the son of Matthew and Charlene Johnson. Doc. 15 at ¶¶ 1–2. At the time of his injury, V.J. was 12 years old. Doc. 16 at ¶ 1. Matthew and Charlene also have a younger son, L.J. Doc. 12 at ¶ 2; Doc. 16 at ¶ 16. The family resides in a suburb outside of the Twin Cities in Minnesota. Doc. 15 at ¶ 3. Defendant Carey Johnson is Charlene Johnson's sister, and defendant Dwight Johnson is Carey's husband. Doc. 12 at ¶ 1; Doc. 16 at ¶ 1. Defendants live on a farm near Dallas, South Dakota. Doc. 12 at ¶ 1; Doc. 16 at ¶ 1. Defendants have a daughter, S.J. Doc. 12 at ¶ 5; Doc. 16 at ¶ 5. Matthew, Charlene, V.J. and L.J. would visit

1

Defendants' farm once or twice per year. Doc. 12 at ¶ 1; Doc. 16 at ¶ 1. During these visits, V.J. and L.J. would ride ATVs. Doc. 12 at ¶ 2; Doc. 16 at ¶ 2.

V.J. was diagnosed with attention deficit hyperactivity disorder around the age of 6. Doc. 15 at ¶ 9. When V.J. was younger his family, for a time, resided in Hartford, South Dakota, and V.J. had a small ATV which he occasionally rode in the backyard.[1] Doc. 12 at ¶ 3; Doc. 16 ¶ at 3; Doc. 15 at ¶ 3. Matthew Johnson estimated that V.J. had ridden ATVs 15 to 20 previous times. Doc. 18-1 at 10. During a previous visit to Defendants' farm, V.J. had an accident on a small ATV which did not result in any serious injury to V.J. or his passenger.[2] Doc. 12 at ¶ 4; Doc. 16 at ¶ 4; Doc. 15 at ¶¶ 78–79

V.J. and his family arrived at Defendants' farm on August 4, 2014. Doc. 12 at ¶ 5; Doc. 16 at ¶ 5. V.J. and L.J. were to stay with Defendants while Matthew and Charlene attended the Sturgis Motorcycle Rally. Doc. 12 at ¶ 5; Doc. 16 at ¶ 5. V.J. rode the ATV around Defendants' farm when they arrived, and both L.J. and S.J. rode along as passengers at various times. Doc. 12 at ¶ 5; Doc. 16 at ¶ 5. The ATV V.J. rode was an adult ATV kept in the shed on Defendants' property, and the keys were regularly left in the ignition. Doc. 18-4 at 6–7. There is a warning stamp on the ATV that directs the operator not to ride with passengers. Doc. 18-4 at 8. Defendant Dwight Johnson testified about his discomfort with children riding the ATVs on the farm, but did not prevent children, including V.J., from doing so. Doc. 18-4 at 6. Later on the day of August 4, 2014, Dwight asked Matthew and Charlene how they felt about V.J. using the ATV, and Matthew indicated his approval as long as V.J. rode by himself with permission and under supervision. Doc. 12 at ¶ 6; Doc. 16 at

---

[1] Apparently they lived in Hartford for approximately one year, and V.J. merely rode this ATV around the backyard. The Defendants characterize the residence as a farm in Hartford, though the Plaintiff disputes that characterization. See Doc. 16 at ¶ 3.

[2] The ATV in question was a small pink ATV sized for children which Dwight and Carey bought for their daughter S.J. (and later sold because Dwight and Carey apparently were tired of other kids riding it). Doc. 15 at ¶¶ 41, 43; Doc. 18-3 at 7.

2

¶ 6. Matthew and Charlene were aware that V.J. had been driving the ATV with passengers and limited supervision at the time of this conversation. Doc. 12 at ¶ 7; Doc. 16 at ¶ 7.

On the morning of August 5, 2014, Matthew and Charlene departed Defendants' farm, leaving V.J. and L.J. in Defendants' care. Doc. 12 at ¶ 8; Doc. 16 at ¶ 8. There is a dispute of fact over whether V.J. asked defendant Carey for permission for both himself and S.J. to ride the ATV before lunch, to which Carey consented, or whether V.J. simply asked Carey for permission to go outside. Doc. 12 at ¶ 9; Doc. 16 at ¶ 9. V.J. then drove the ATV and S.J. rode as a passenger. Doc. 12 at ¶ 10; Doc. 16 at ¶ 10. V.J. had been driving the ATV along a gravel road on the farm for 10 to 20 minutes when Defendants' dog ran in front of the ATV. Doc. 12 at ¶ 11; Doc. 16 at ¶ 11. In an attempt to avoid hitting the dog, V.J. swerved the ATV toward a barbed wire fence. Doc. 12 at ¶ 11; Doc. 16 at ¶ 11. V.J. was unable to stop the ATV and it crashed through the barbed wire fence, throwing V.J. and S.J. from the ATV and entangling them in the barbed wire. Doc. 12 at ¶ 11; Doc. 16 at ¶ 11. Both V.J. and S.J. sustained injuries and V.J. has significant scarring. Doc. 12 at ¶ 12; Doc. 16 at ¶ 12.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed.

Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); see also Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment.") (internal quotations and citation omitted). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**III. Discussion**

The laws of South Dakota, where the accident occurred and where this case is venued, govern this diversity action for negligence. Heatherly v. Alexander, 421 F.3d 638, 641 (8th Cir. 2005). Defendants assert that Plaintiff's claim of negligent supervision is barred as a matter of law by the affirmative defenses of contributory negligence and assumption of the risk. Doc. 14 at 4. In addition, Defendants argue that V.J. must be held to an adult standard of care and that his conduct constitutes contributory negligence and assumption of the risk regardless of the standard applied. Doc. 14 at 6–9. Because the questions of whether Plaintiff was contributorily negligent or assumed the risk should be decided by a jury under South Dakota law, summary judgment is inappropriate and thus denied.

**A. Standard of Care**

The standard of care to be applied to V.J. is a matter of law for the Court to determine. Determination of the applicable standard of care must precede any evaluation of V.J.'s alleged negligence. Typically a minor is not held to the objective standard of the reasonable prudent

person, but instead "a special (subjective) standard of care is used which takes into account his age, intelligence, experience and capacity." Alley v. Siepman, 214 N.W.2d 7, 10 (S.D. 1974) (quotation omitted). However, a minor can be "held to the same standard of conduct as that of an adult [when] he engages in an activity normally only undertaken by adults." Id. (quotation omitted); see also Wangsness v. Builders Cashway, Inc., 779 N.W.2d 136, 140 n.1 (S.D. 2010) (noting the trial court instructed the jury on the standard of care applicable to minors as articulated in Alley where the plaintiff was a fifteen year old).

There is a dearth of cases from the Supreme Court of South of Dakota establishing what activities constitute those "normally only undertaken by adults," so the parties have relied primarily on cases from other jurisdictions. The Supreme Court of South Dakota commonly looks to the Restatement (Second) of Torts on questions involving duty in negligence cases. See Millea v. Erickson, 849 N.W.2d 272, 277–78 (S.D. 2014) (citing to the Restatement (Second) of Torts when discussing the duty owed when a special relationship exists between parties and gratuitous duty); Hendrix v. Schulte, 736 N.W.2d 845, 848 (S.D. 2007) (citing to the Restatement (Second) of Torts in discussing the duty between landlord and tenant). The Restatement (Second) of Torts offers guidance as to when a minor is held to an adult standard:

> An exception to the rule stated in this Section may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. As in the case of one entering upon a professional activity which requires special skill (see § 299A), he may be held to the standard of adult skill, knowledge, and competence, and no allowance may be made for his immaturity. Thus, for example, if a boy of fourteen were to attempt to fly an airplane, his age and inexperience would not excuse him from liability for flying it in a negligent manner. The same may be true where the child drives an automobile. In this connection licensing statutes, and the examinations given to drivers, may be important in determining the qualifications required; but even if the child succeeds in obtaining a license he

5

> may thereafter be required to meet the standard established primarily for adults.

Restatement (Second) of Torts § 283A cmt. c (1965).

Defendants assert that the operation of a motor vehicle is typically deemed an adult activity, and cite to a number of cases in support of that assertion. Doc. 14 at 7–8. However, most of these cases involve a child operating a vehicle of some type on a public road or being subject to licensing requirements. See Costa v. Hicks, 470 N.Y.S.2d 627, 632 (N.Y. App. Div. 1983) (holding that a minor defendant had to be held to an adult standard of care where he had driven a motorcycle through a residential neighborhood and collided with the plaintiff); Demeri by Demeri v. Morris, 477 A.2d 426, 429 (N.J. Super. Ct. Law Div. 1983) ("Once an infant chooses to operate any motor vehicle over a public road, the standard of reasonable care applies. Children who drive negligently over a public road cannot benefit from their age."); McNall v. Farmers Ins. Grp., 392 N.E.2d 520, 527 (Ind. Ct. App. 1979) (holding a minor defendant who operated a motorcycle on a public road to an adult standard of care because it required "adult qualifications" such as being licensed); Medina v. McAllister, 196 So. 2d 773, 774 (Fla. Dist. Ct. App. 1967) (holding that the subjective standard normally applicable to children "does not apply to the conduct of a minor in the operation of a motor vehicle on the public streets or highways"). Defendants also cite to Perricone v. DiBartolo, 302 N.E.2d 637 (Ill. App. Ct. 1973), and rely on the fact that the child plaintiff was riding a motorbike on a sidewalk rather than on the road itself as a basis for holding V.J. to an adult standard now. This argument is unavailing. The Appellate Court of Illinois made clear that the operation of the motorbike on a public sidewalk was a key reason the minor in that case was held to an adult standard of care. Id. at 641 ("[E]ven the normal operation of a minibike on a sidewalk in a residential area endangers the general public"). Defendants cite a case from the state of Washington that supports holding V.J. to an adult

standard of care, but in that case the Supreme Court of Washington explicitly rejected the standard of "activities normally undertaken only by adults"—as articulated in the Restatement (Second) of Torts and by the Supreme Court of South Dakota—and adopted an alternative standard. See Robinson v. Lindsay, 598 P.2d 392, 393–94 (Wash. 1979) ("We believe a better rationale is that when the activity a child engages in is inherently dangerous, as is the operation of powerful mechanized vehicles, the child should be held to an adult standard of care.").

Contrary to the cases cited by Defendants, the facts here do not warrant holding V.J. to an adult standard of care. V.J. was not operating the ATV in question on a public road, sidewalk, or other thoroughfare where the general public was placed at risk; instead he was driving along the private gravel roads of Defendants' farm. At the time of the accident, V.J. was 12 years old and thus not old enough to obtain a driver's license. Despite Defendants' argument that the operation of an adult sized ATV should render V.J. subject to an adult standard of care, the case law does not support the notion that the operation of an ATV on private property is an activity "normally undertaken only by adults." Because V.J. was a minor at the time of the accident, and because the operation of an ATV on private property does not constitute an activity normally undertaken only by adults as a matter of law, V.J. must be held to the subjective standard of care normally applicable to minors which takes into account "his age, intelligence, experience and capacity." Alley, 214 N.W.2d at 10.

### B. Contributory Negligence

Under South Dakota law, a plaintiff who is contributorily negligent is barred from recovering damages where his own negligence was more than slight in comparison to the negligence of the defendant. Wood v. City of Crooks, 559 N.W.2d 558, 559–60 (S.D. 1997); see

also SDCL 20-9-2.[3] "Slight" in this context is defined as "small of its kind or in amount; scanty; meager." Wood, 559 N.W.2d at 560 (quotation omitted). The Supreme Court of South Dakota has made clear that the question of whether a plaintiff was contributorily negligent is ordinarily a question for the jury. Id.; see also Zens v. Harrison, 538 N.W.2d 794, 796 (S.D. 1995) ("Determining negligence has always been the jury's function"); Theunissen v. Brisky, 438 N.W.2d 221, 223 (S.D. 1989) ("This court has repeatedly said that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact . . . .") (quotation omitted). Therefore, "[s]ummary judgment is generally not feasible in negligence cases." Casillas v. Schubauer, 714 N.W.2d 84, 88 (S.D. 2006). Only in rare circumstances does the issue of whether a plaintiff's contributory negligence was more than slight become an issue of law. See Schmidt v. Royer, 574 N.W.2d 618, 627 (S.D. 1998) ("In some cases, whether one's contributory negligence was more than slight may be decided as a matter of law."); Westover v. E. River Elec. Power Coop., Inc., 488 N.W.2d 892, 896 (S.D. 1992) ("It is only when the facts show beyond any dispute that plaintiff has committed negligence more than 'slight,' that it is appropriate for the circuit court and this court to hold, as a matter of law, for a negligent defendant."); Lovell v. Oahe Elec. Coop., 382 N.W.2d 396, 399 (S.D. 1986) ("When facts show that the plaintiff, beyond reasonable dispute, was guilty of negligence more than slight, it is the function of the trial court to hold, as a matter of law, for the defendant.").

---

[3] SDCL § 20-9-2 provides as follows:
> In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

Such rare circumstances are not present here. The allegation of negligence on the part of Defendants is that they let V.J., a 12 year old boy who had ridden an ATV 15 to 20 times in his life and typically did so on Defendants' property, ride their adult ATV while unsupervised on the Defendants' gravel roads with a passenger, in apparent contravention of the instructions of V.J.'s parents regarding his use of that ATV. The Defendants allege that V.J. was contributorily negligent in riding an adult ATV with a passenger, despite there apparently being a warning label on the ATV regarding passengers, and in swerving to avoid hitting Defendants' dog and crashing through a barbed wire fence. These facts do not show "beyond any dispute" that V.J., as a matter of law, was contributorily negligent more than slight. Westover, 488 N.W.2d at 896. Likewise, the facts do not show that Defendants were themselves negligent as a matter of law, and each question is appropriately left for a jury to determine. Zens, 538 N.W.2d at 796; Theunissen, 438 N.W.2d at 223. V.J.'s conduct must be measured against that of a child of similar "age, intelligence, experience and capacity," so a determination as a matter of law that his conduct was contributorily negligent more than slight is inappropriate based on the facts presented.

Defendants cite to Engel v. Stock, 225 N.W.2d 872 (S.D. 1975), and Nugent v. Quam, 152 N.W.2d 371 (S.D. 1967), in support of their motion, but these cases illustrate why summary judgment is inappropriate in the present case. In Engel, the plaintiff was driving along a city street and crashed into the defendant who was backing out of a driveway on the opposite side of the street. 225 N.W.2d at 872. The trial court granted the defendant a directed verdict and the Supreme Court of South Dakota affirmed that decision, holding that the plaintiff was negligent as a matter of law in crossing the center line in violation of a state statute requiring motorists to stay on their half of the road. Id. at 873. In rejecting the plaintiff's argument that the case should be submitted to a jury to determine if her contributory negligence was more than slight,

the court noted that the plaintiff's contributory negligence in driving 20 to 25 miles per hour on the wrong side of the road could not be judged as less than slight when compared to the actions of the defendant, who had been cautiously backing out of her driveway and was where she had a legal right to be. Id. at 874. In addition, the court noted that the plaintiff could not "take solace in [South Dakota's] comparative negligence statute" because the defendant was not the proximate cause of the accident, thus rendering the statute inapplicable to that case. Id. In Nugent, the Supreme Court of South Dakota held that a plaintiff-pedestrian who was struck by a speeding driver as he crossed a busy street at dusk outside of the crossing zone was contributorily negligent, and that his negligence was more than slight as compared to that of the defendant driver who arguably had been negligent in respect to speed, lookout, and control. 152 N.W.2d at 378–79. Importantly, the court noted that a pedestrian entering a lane where vehicular traffic has the right-of-way who has discovered an oncoming vehicle has a duty to keep watch of that vehicle's progress and exercise reasonable care to avoid being struck, a duty which the plaintiff had failed to fulfill. Id. at 378–79. In both cases cited by Defendants, the plaintiff violated an established legal duty, making the question of their contributory negligence an issue of law to be decided by a court.

This Court has granted summary judgment when contributory negligence greater than slight is clear as a matter of law. In Lindholm v. BMW of North America, LLC, 202 F. Supp. 3d 1082 (D.S.D. 2016), this Court determined that a plaintiff's negligence and negligent design claims in a products liability and wrongful death action failed due to the deceased's contributory negligence as a matter of law. In Lindholm, this Court found that no reasonable juror could find that the deceased—an adult doing work on the undercarriage of a car supported solely by a car jack being used contrary to warnings on the jack—had not misused the product involved in the

accident for which the plaintiff was bringing the claims, and such misuse barred those claims founded in products liability. Id. at 1092–1100. However, the present case does not offer a analogous set of circumstances that would lead this Court to rule V.J. was contributorily negligent as a matter of law. Because the questions of negligence as to both Defendants and V.J., as well as the comparative degree between each party, are questions for the jury, Defendants' motion for summary judgment based on contributory negligence is denied.

### C. Assumption of the Risk

Defendants last argue that Plaintiff's claims are barred because V.J. assumed the risk of injury by operating the ATV. "A defendant asserting assumption of the risk must establish three elements: 1) that the plaintiff had actual or constructive knowledge of the risk; 2) that the plaintiff appreciated the character of the risk; and 3) that the plaintiff voluntarily accepted the risk, given the time[,] knowledge, and experience to make an intelligent choice." Stone v. Von Eye Farms, 741 N.W.2d 767, 772 (S.D. 2007) (citing Goepfert v. Filler, 563 N.W.2d 140, 142 (S.D. 1997)). Failure to establish any of the three elements negates the defense. Id. The question of whether a plaintiff has assumed the risk is ordinarily one for the jury, and only when the essential elements are conclusively established may a plaintiff be charged with assumption of the risk as a matter of law. Smith v. Cmty Coop. Ass'n of Murdo, 209 N.W.2d 891, 892 (S.D. 1973); see also Mack v. Kranz Farms, Inc., 548 N.W.2d 812, 814 (S.D. 1996) ("Ordinarily, questions of negligence, contributory negligence and assumption of risk are for the jury, provided there is evidence to support them.") (citation omitted).

The Supreme Court of South Dakota recently expounded on the first and second elements of assumption of the risk in Schott v. South Dakota Wheat Growers Ass'n, 2017 S.D. 91 (2017), drawing heavily from the Restatement (Second) of Torts. Regarding knowledge and

appreciation of risk, a plaintiff "must not only know of the facts [that] create the danger, but they must comprehend and appreciate the danger itself." Id. at ¶ 13 (alteration in original) (quoting Duda v. Phatty McGees, Inc., 758 N.W.2d 754, 758 (S.D. 2008)). "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates." Id. (citation omitted). A plaintiff will not be found to have assumed the risk "[i]f by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation . . . ." Id. (alteration in original) (quoting Restatement (Second) of Torts § 496D cmt. c). However, the knowledge and appreciation elements are not purely subjective questions in constructive knowledge cases, as "[t]here are some risks as to which no adult will be believed if he says that he did not know or understand them." Id. at ¶ 14. "Ultimately, whether the knowledge at issue is actual or constructive, knowledge of the risk and appreciation of its magnitude and unreasonable character are normally questions of fact for the jury" and should be resolved by the court only "where reasonable [people] could not differ on the question whether [the plaintiff] assumed the risk." Id. (alterations in original) (citations omitted).

The Defendants argue that the knowledge and appreciation elements are met here because V.J. had ridden an ATV on multiple occasions in the past and had been involved in an accident with the smaller ATV a few years before the incident giving rise to this action. Doc. 14 at 10–11; Doc. 19 at 17–18. In addition, Defendants argue the warning label on the ATV also gave V.J. knowledge of the risk. Doc. 19 at 18. However, these facts are not quite of the quality which establish that V.J. had a knowledge of and appreciation for the risk such that reasonable people could not differ on whether he assumed the risk or not. See Schott, 2017 S.D at ¶ 14. V.J. acknowledged riding an ATV in the past and his father testified that he had probably ridden

an ATV some 15 to 20 times in his life. Doc 18-1 at 10; Doc. 18-5 at 7. While V.J.'s "experience in prior years [may] create[] an inference of actual knowledge [at the time of the accident], at the summary judgment stage, inferences drawn from facts must be viewed most favorably to [the non-moving party]." Schott, 2017 S.D. at ¶ 15. As to the accident, V.J. testified that he recalled falling off of the small ATV Defendants previously owned but did not remember the specifics of the incident. Doc. 18-5 at 9. He further testified that he sustained only minor cuts so "it wasn't that big." Doc. 18-5 at 9. If indeed the accident took place two or three years before the accident in this case, V.J. would have been nine or 10 years old at the time. Reasonable factfinders, taking V.J.'s age and experience into account, could reach different conclusions as to his 'knowledge of the risk and appreciation of its magnitude" regarding the operation of an adult ATV, thus rendering a decision on the matter by this Court to be an inappropriate incursion into the province of the jury. The Defendants have not conclusively established the first or second elements required for assumption of the risk, thus that defense fails at the summary judgment stage. See Stone, 741 N.W.2d at 772.

Defendants rely heavily on two cases from the state of Ohio in arguing that V.J. assumed the risk of injury by operating the adult ATV. The problem with Defendants' reliance on those cases is that there is established precedent in Ohio dictating that losing control and flipping an ATV is a "foreseeable and customary risk associated with the activity of driving or riding an ATV" such that one who participates in that activity assumes the risk as a matter of law. See McLoughlin v. Williams, No. CA2015-02-020, 2015 WL 4878547, *3 (Ohio Ct. App. Aug. 17, 2015) (citing Ohio case law establishing that individuals, including minors, assume the customary and foreseeable risks associated with recreational activities such as driving an ATV); Paxton v. Ruff, Inc., No. CA97-04-089, 1998 WL 8695, *4 (Ohio Ct. App. Jan. 12, 1998)

13

(affirming summary judgment for minor defendant responsible for an ATV accident because both defendant and victim "assumed responsibility for the activities which resulted in their injuries"). No such precedent exists in South Dakota; rather, the Supreme Court of South Dakota has articulated the three elements to establish the defense of assumption of the risk and instructed that when those elements cannot be conclusively established it is a question for the jury, not a court, to determine whether a plaintiff has assumed the risk.

While V.J.'s knowledge of ATV operation and prior experience of an accident make assumption of the risk as a matter of law a close question, the facts do not so conclusively establish the elements such that "reasonable people could not differ" as to whether V.J. assumed the risk or not. Under such circumstances, that is a question for the jury to answer. The Defendants' motion for summary judgment is therefore denied on grounds that V.J. assumed the risk of operating the adult ATV.

## IV. Conclusion

For the reasons explained above, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 11, is denied.

DATED this 16th day of January, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE